**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AZG Enterprise Incorporated, | No. CV-25-01657-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Honeywell International Incorporated, *et al.*, | |
| Defendants. | |

At issue is Defendant Honeywell International Incorporated and Defendant Honeywell International SARL's Motion to Dismiss (Doc. 33, MTD), to which Plaintiff filed a Response (Doc. 36, Resp.) and Defendants filed a Reply (Doc. 38, Reply). The Court has reviewed the parties' briefs and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants in part and denies in part Defendants' Motion.

**I.     BACKGROUND**

On January 17, 2025, Plaintiff initiated this action in the Southern District of Texas, where it filed a complaint alleging negligent misrepresentation and fraud and/or fraud in the inducement. (Doc. 1, Complaint.) The District Court for the Southern District of Texas subsequently transferred this Case to the District of Arizona. (Doc. 21.)

In its Complaint, Plaintiff alleges the following facts. Plaintiff and Defendants are sophisticated manufacturing entities. (Complaint ¶¶ 7–8.) In April 2023, they began discussions for an arrangement whereby Defendants would provide engineering support and a license for Plaintiff's use of Defendants' proprietary electroplating bath chemical

solution, and in exchange Plaintiff would pay licensing fees and royalty assessments to Defendants. (Complaint ¶ 9.) Before the contracts were executed, Plaintiff informally requested the pricing of Defendants' chemical solution. (Complaint ¶¶ 10–11.)

Defendants responded that the cost of the Honeywell advanced electroplating process ("HAEP") chemicals would be approximately $200,000 for an initial 2,000 gallon-tank and $150,000 for replenishment of said tank. (Complaint ¶ 12.) Defendants also indicated that the expected cost to electroplate a part would be about $300 per part. (Complaint ¶ 12.) Defendants' email with the pricing estimates contains a note that the pricing of the materials fluctuates daily and only rough pricing estimates are possible. (Complaint ¶ 13.) Plaintiff alleges that, in reliance on the pricing estimate provided by Defendants, it entered into a Sales Contract and License Agreement (collectively, the "Contracts") with Defendants in February 2024. (Complaint ¶ 13.) Defendants assert, and Plaintiff does not allege otherwise, that pricing was not discussed or requested by Plaintiff again, either informally or formally, before the signing of the Contracts. (MTD at 3.)

The Contracts contain a choice-of-law clause stating that New York law governs any claims predicated on the Contracts.[1] (MTD at 7–8.) The Contracts also contain a merger clause, stating that "[t]his [a]greement . . . constitute[s] the entire agreement between the Parties with respect to the subject matter thereof and supersedes all previous agreements, communications, representations, either verbal or written between the Parties hereto." (MTD at 9.) In October 2024, Plaintiff informally requested pricing a second time. (Complaint ¶¶ 17–18.) Defendants responded that the actual replenishment cost was over $771 per part—more than 2.5 times higher than initially estimated in 2023. (Complaint ¶ 17.) Defendants also informed Plaintiff of errors in the underlying calculations of the original estimates. (Complaint ¶ 18.) Once Plaintiff realized the October 2024 price was higher than the October 2023 price, Plaintiff filed suit against Defendants. (MTD at 7.) Plaintiff's complaint asserts claims arising out of Texas law. (Complaint ¶¶ 22, 30.)

---

[1] Although the Complaint does not mention the choice-of-law or merger clauses cited in the MTD, the Court considers these terms of the Contracts because they are incorporated by reference. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

Defendants have moved the Court to dismiss Plaintiff's Complaint with prejudice under Federal Rules of Civil Procedure 8(a)(2), 12(b)(6), and 9(b).

## II.   LEGAL STANDARD

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Where a plaintiff alleges fraud or misrepresentation, however, Rule 9(b) imposes heightened pleading requirements. Specifically, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). The heightened pleading requirements of Rule 9(b) apply even where "fraud is not a necessary element of a claim." *Vess*, 317 F.3d at 1106. So long as a plaintiff alleges a claim that "sounds in fraud" or is "grounded in fraud," Rule 9(b) applies. *Id.* "While a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Id.*

### III. ANALYSIS

As mentioned above, Plaintiff's Complaint cited Texas law. But the Contracts provide that New York law governs any disputes that arise from the transactions. Where, as here, this Court has jurisdiction due to the diversity of the parties, it must apply Arizona's choice-of-law rules to decide which state's substantive law governs the dispute. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).

Arizona courts determine whether a contractual choice of law provision is "valid and effective" using the Restatement. *Swanson v. Image Bank, Inc.*, 77 P.3d 439, 441–42 (Ariz. 2003). If parties designate a governing body of law in their contract, the Court will generally apply it except when their chosen law has "no substantial relationship to the parties of the transaction" or application of the chosen state's law would "be contrary to a fundamental policy of a state which has a materially greater interest . . . and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement (Second) of Conflicts of Law § 187(2)(a–b) (1971). New York plainly has a substantial relationship to the Parties, as Defendants conduct significant business there. In any event, however, Plaintiff concedes that New York law governs. (Resp. at 6–7.) The Court will apply the law of New York.

### A.     Merger Clause

Defendants argue that the Contracts' merger clause bars Plaintiff from bringing its fraud and misrepresentation claims. However, "[p]ut simply, a claim for fraud in the inducement cannot be defeated through the use of a merger clause." *M&T Mortg. Corp. v. Miller*, 323 F. Supp. 2d 405, 411 (E.D.N.Y. 2004). Moreover, a party cannot misrepresent a fact to induce a party into an agreement "and then protect himself from the legal effect of such misrepresentation by inserting in the contract a clause to the effect that he is not to be held liable for the misrepresentation which induced the other party to enter into the contract." *Jackson v. State*, 205 N.Y.S. 658, 661 (App. Div. 1924). The Court holds, therefore, that the merger clause of the Contracts is not dispositive over the claims here.

### B.     Fraudulent inducement

To prove fraudulent inducement under New York law, a plaintiff must allege that "(1) the defendant made a material, false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Gander Mountain Co. v. Islip U-Slip LLC*, 923 F. Supp. 2d 351, 366 (N.D.N.Y. 2013). There is ordinarily no duty to disclose material facts in business transactions unless "one party has superior knowledge that is not readily available/accessible to the other party and that party knows the other party is acting on the basis of mistaken knowledge." *Id.*

Here, Defendants argue that Plaintiff did not reasonably rely on the pricing estimate provided during contract negotiations. (MTD at 11.) In its Complaint, Plaintiff states it could not verify the costs associated with Honeywell's proprietary electroplating process and therefore was forced to reasonably rely on the pricing estimates provided. (Complaint ¶ 26.) Plaintiff received a pricing estimate during contract negotiations in October 2023 (Complaint ¶ 12.) From the time of contract negotiation—October 2023—to the execution of the Contracts—February 2024—roughly three to four months had elapsed. (Complaint ¶ 14.) The Court finds that reliance on a three-to-four-month-old representation by a contracting party is plausibly reasonable.

Defendants further argue that Plaintiff "cannot establish that it entered into an arm's length transaction in justifiable reliance on alleged misrepresentations if plaintiff failed to make use of the means of verification that were available to it." *Ventur Grp., LLC v. Finnerty*, 68 A.D. 638, 639 (N.Y.A.D. 1 Dept., dec. 22, 2009) (quoting *UST Private Equity Invs. Fund v. Salomon Smith Barney*, 288 A.D.2d 87, 88 (N.Y.A.D. 1 Dept., Nov. 15, 2001)). Plaintiff did not have its own way to verify the pricing because defendants were "the only part[ies] that had the information to calculate the HAEP costs, as the chemicals, as well as the process (such as workflow and processing time) are proprietary." (Complaint ¶ 13.) Plaintiff did use the means of verification that was available to it at the time of contract negotiations, which consisted of asking Defendants for a pricing estimate.

Although Defendants' price estimate contained a note that the pricing of materials fluctuates daily and that it was only a rough estimate, this was the only representation that Plaintiff had to rely on. Moreover, the question of what constitutes reasonable reliance is not generally a question to be resolved as a matter of law upon a motion to dismiss. *ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, 25 N.Y.3d 10443, 1045 (2015). As Plaintiff's reliance on the representations provided by Defendants was plausibly reasonable, Plaintiff's claim for fraud and/or fraudulent inducement may survive, although it is subject to a Rule 9(b) analysis.

### 1. Federal Rule of Civil Procedure 9(b)

Plaintiff has the heightened burden of "stat[ing] with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996). Plaintiffs also "must allege facts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)).

A strong inference of fraudulent intent is pled by "(1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* Plaintiff alleges that Defendants knew at the time of the pricing discussion that the representations were false, and that Defendants intended for Plaintiff to act on the misrepresentations in order to induce Plaintiff to enter into the Contracts. (Complaint ¶¶ 24–25.)

Plaintiff's allegations on this point are conclusory and lack the particularity required under the heightened standard of Rule 9(b). The Complaint does not allege a motive for Defendants to make a material misrepresentation to induce Plaintiff to enter into the Contracts. It is settled New York law that a general allegation that a defendant stood to gain profits from a transaction does not supply the requisite motive to survive a motion to dismiss. *See e.g., Green Star Energy Sols., LLC v. Edison Props., LLC*, 2022 WL 16540835, at *9 (S.D.N.Y. Oct. 28, 2022) (holding that "a general motive to increase profits does not suffice" to overcome a Rule 9(b) challenge); *Landesbank Baden-Wurttemnerg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 681 (2d Cir. 2004) ("[A] general profit motive common to all corporations . . . does not suffice."). The allegations in the Complaint do not state a motive for Defendants to commit fraud other than to induce Plaintiff to enter into the Contracts. To convince a party to enter into a contract is simply a general motive to increase profits and therefore cannot support a fraud claim.

The Complaint also does not allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. The Complaint states that Defendants acknowledged in October 2024 that the chemical cost calculations sent in 2023 contained errors, (Complaint ¶ 18), but Plaintiff did not state anything indicating that Defendants knew about the error when the representation was first made. Further, there are no facts alleged that evince conscious misbehavior by Defendants.

Plaintiff argues that even if the Complaint fails to properly allege motive, an exception exists "where there is a gross inadequacy of price, [as] that alone will raise a

- 7 -

presumption of fraud in some instances and form a sufficient basis to grant relief." *Friedman v. Hirsch*, 18 N.Y.S. 85 (Gen. Term 1892). Defendants counter that the full context of *Friedman* illustrates that only in rare circumstances should a plaintiff who alleges mere gross price inadequacy survive dismissal and that usually more is necessary. Cases that have applied the exception involve circumstances where a party has been relieved from an improvident bargain, circumstances of suspicious character connected with the transaction, or something in the relations of the parties renders it inequitable. *Friedman*, 18 N.Y.S. at 86. Plaintiff has not asserted that such circumstances are present here.

Moreover, the Court agrees with Defendants that *Friedman* is not controlling law. *Friedman* was decided in 1892, long before the Federal Rules of Civil Procedure were written. So Plaintiff's proposition that an exception to Rule 9(b) exists by virtue of *Friedman* is unfounded. *Friedman* is not routinely applied law in New York; it has only been cited eight times, with the most recent citation occurring in 1972. Neither the New York Court of Appeals nor the Second Circuit have cited or relied on *Friedman*. Plaintiff's fraudulent inducement claim fails under Rule 9(b).

### C.     Negligent misrepresentation

To prove negligent misrepresentation under New York law, a plaintiff must allege (1) that the defendant had a duty, as a result of a "special relationship," to give correct information; (2) that the defendant made a false representation that it should have known was incorrect; (3) that the defendant knew the plaintiff desired the information for a "serious purpose;" (4) that the defendant intended for the plaintiff to rely and act upon it; and (5) that the plaintiff reasonably relied on it, causing injury. *Hydro Inv., Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). The elements in dispute are whether a "special relationship" existed between the Parties, and whether the pricing estimates were used for a "serious purpose."

. . .

. . .

### 1. Special Relationship

In determining whether a special relationship exists in a commercial context, courts must consider three factors: "whether the defendant held or appeared to hold unique or special expertise; whether there is a special relationship of trust or confidence; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *JTRE Manhattan Ave. LLC v. Capital one, N.A.*, 585 F. Supp. 3d 474, 479 (S.D.N.Y. 2022) (internal quotations omitted).

New York courts typically find that "a special relationship of trust generally does not exist between sophisticated commercial entities entering into arm's length business transactions." *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 329 (S.D.N.Y. 2002); *see also Seuz Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103–04 (2d Cir. 2001). Further, "[s]uccessful negligent misrepresentation claims in New York typically demonstrate not only that defendant was aware of plaintiff's reliance, but that it urged the plaintiff to rely on its alleged misrepresentations." *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 329 (S.D.N.Y. 2002).

Plaintiff relies on *Suez*, where the complaint implied "a relationship between the parties that extended beyond the typical arm's length business transaction, [including] defendants initiat[ing] contact with the plaintiffs, induc[ing] them to forebear from performing their own due diligence, and repeatedly vouch[ing] for the veracity of the allegedly deceptive information." 250 F.3d at 103. *Suez* differs from the case here. Defendants cautioned against and did not urge Plaintiff to rely on the pricing estimates. However, Defendants did have unique or special expertise as they were the only party that could provide a pricing estimate due to the proprietary nature of the chemicals used. Additionally, Defendants provided the pricing estimate during contract negotiations, and that information was sought as part of Plaintiff's analysis of its profitability projections. (Complaint ¶¶ 10–11.) It is therefore plausible that, based on the facts alleged in the Complaint, a special relationship existed between the parties that extended beyond typical arm's length business transaction.

### 2. Serious Purpose

Here, Defendants argue that the facts alleged do not show that Defendants were aware Plaintiff would use the pricing information for a serious purpose. (MTD at 14.) The Court disagrees. Plaintiff alleges that the pricing estimate was given during contract negotiations, which were critical to Plaintiff's analysis of its profitability projections. It is difficult to imagine a situation during contract negotiations when a party requests a pricing representation that is not going to be used for a serious purpose. Plaintiff has plausibly averred that Defendants knew that the information they supplied was to be used by Plaintiff for a serious purpose. Plaintiff's negligent misrepresentation claim thus survives.

## IV. CONCLUSION

In sum, the Court dismisses the claim for fraud and/or fraudulent inducement but preserves the claim for negligent misrepresentation. Neither party addressed whether leave to amend should be granted, but the Court nevertheless considers *sua sponte* whether leave to amend is appropriate here.

A party may amend a pleading once as a matter of course within 21 days after serving it, or within 21 days of service of, *inter alia*, a Rule 12(b)(6) motion. Fed. R. Civ. P. 15(a). In all other circumstances, absent the opposing party's written consent, a party must seek leave to amend from the court. Fed. R. Civ. P. 15(a)(2). Although the decision to grant or deny a motion to amend is within the trial court's discretion, "Rule 15(a) declares that leave to amend shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted). "In exercising its discretion with regard to the amendment of pleadings, a court must be guided by the underlying purpose of Rule 15—to facilitate a decision on the merits rather than on the pleadings or technicalities." *Eldridge v. Block,* 832 F.2d 1132, 1135 (9th Cir. 1987) (citation and internal quotation marks omitted).

However, the policy in favor of allowing amendments is subject to limitations. After a defendant files a responsive pleading or a motion under Rule 12(b), (e), or (f), the propriety of leave to amend is determined by consideration of five factors: "bad faith,

undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). "[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.'" *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (quoting *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 879 (9th Cir. 1999)).

The Court concludes that any amendment is likely to be futile. "Futility alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003). Plaintiff did not initially include in its Complaint factual allegations indicating that Defendants possessed a motive to fraudulently induce Plaintiff or that Defendants acted recklessly. Plaintiff also did not change position following the parties' meet-and-confer in a manner that would suggest there is anything of substance to add to the Complaint. Finally, nothing in Plaintiff's Response mentions the existence of other information that is known to Plaintiff that might justify amendment. The Court therefore concludes that amendment would be futile, and The Court accordingly dismisses the claim for fraud and/or fraudulent inducement without leave to amend.

The Court will set a scheduling conference in this matter by separate order, whereat the Court may amend the discovery deadlines set by the District Court for the Southern District of Texas. (*See* Doc. 18.)

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendants' Motion to Dismiss (Doc. 33).

**IT IS FURTHER ORDERED** dismissing only the claim in the Complaint (Doc. 1) for fraud and/or fraud in the inducement.

**IT IS FURTHER ORDERED** denying as moot Plaintiff's Motion to Stay Discovery (Doc. 35).

Dated this 28th day of August, 2025.

Honorable John J. Tuchi
United States District Judge